[Cite as *State v. Clark*, 2018-Ohio-4759.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1256

     Appellee                                       Trial Court No. CR0201701343

v.

Marcus L. Clark, Sr.                               **DECISION AND JUDGMENT**

     Appellant                                     Decided:  November 30, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common

Pleas, convicting appellant, Marcus Clark, of one count of retaliation in violation of R.C.

2921.05(B) and (C), a felony of the third degree.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On February 17, 2017, appellant was sentenced to 17 months in prison in case No. CR0201603039 for his conviction for menacing by stalking. Following appellant's sentencing hearing, Lucas County Sheriff's Deputy Jason Stambaugh transported appellant back to the Lucas County Correctional Center by way of a tunnel connecting it with the Lucas County Court of Common Pleas. As appellant was exiting the elevator leading to the tunnel, Stambaugh heard appellant say "that bitch is going to get what's coming to her when I get out," referring to the victim of his conviction for menacing by stalking. A few moments later, while they were in the tunnel, Stambaugh heard appellant say "I'm gonna kill that bitch."

{¶ 3} Stambaugh notified his supervisor and wrote a report regarding appellant's statements. Appellant was subsequently indicted in the present case on February 22, 2017, with one count of retaliation against the victim of a crime.

{¶ 4} Appellant was arraigned on March 2, 2017. On March 3, 2017, appointed counsel filed a written demand for discovery. The state responded on March 8, 2017, and provided the officer reports from Stambaugh and the investigating officer, Toledo Police Detective Mary Jo Jaggers. The state did not provide any video from the basement of the courthouse where the statements were allegedly made. On March 30, 2017, appellant filed a motion to compel discovery, seeking the videotapes from the basement and tunnel. In response to appellant's motion to compel, the state asserted that while the video requested by appellant did exist at one time, the retention schedule for the video was 21

2.

days, after which it was automatically overwritten. In this case, the incident occurred on February 17, 2017, and was automatically overwritten on March 10, 2017. The state later supplemented its response to provide a video maintained by a second system which purported to show appellant making his second retaliatory threat. In addition, the state provided a video of Stambaugh recreating the circumstances surrounding appellant's first retaliatory threat, showing which direction they were facing, their speed of movement, and appellant's approximate position. Importantly, the systems used to record the videos in the tunnel area did not have audio capability, so no audio recording of the events existed at any time.

{¶ 5} On June 5, 2017, appellant moved to dismiss the indictment. Appellant argued that his due process rights were violated when the state failed to preserve the video showing him making the first retaliatory threat. Specifically, appellant argued that the area shown on the video was well lit and easily discernable, and the video would have contradicted Stambaugh's testimony that appellant in fact made the threats. Further, the video would have impacted the credibility of Stambaugh's testimony as to the second alleged retaliatory threat. Thus, appellant concluded that the video was materially exculpatory evidence.

{¶ 6} The trial court held a hearing on appellant's motion on June 13, 2017. At the hearing, Stambaugh elaborated that when appellant made the retaliatory threats, he was agitated, and his arms were flailing as much as they could while being confined by the belly chain attached to his wrist restraints. After the testimony was presented, the

3.

trial court permitted the parties to brief the issues surrounding appellant's motion to dismiss.

{¶ 7} Appellant's trial was held on October 10, 2017. At the start of the trial, the court ruled on appellant's motion. The court found that while the video of the first retaliatory threat might have been potentially useful, it was not materially exculpatory. Therefore, the trial court denied appellant's motion to dismiss, and the matter proceeded to a bench trial.

{¶ 8} At the trial, Stambaugh testified first for the state. He testified that appellant had just been sentenced to 17 months in prison for the crime of menacing by stalking. As Stambaugh was transporting appellant back to the jail, appellant made two relevant statements. First, as they were getting off of the elevator from the courthouse, appellant stated "[T]hat bitch is going to get what's coming to her when I get out." Second, as they were proceeding through the tunnel to the jail, appellant stated, "I'm gonna kill that bitch." On cross-examination, Stambaugh recounted that at the June 13, 2017 hearing he testified that appellant's arms were flailing about. However, Stambaugh admitted that in the video showing when the second retaliatory threat occurred, appellant's arms were not moving.

{¶ 9} Following Stambaugh, the state called Toledo Police Detective Mary Jo Jaggers, who testified that her investigation of the incident consisted only of speaking with Stambaugh on the phone. The state then called as its final witness, Roger Kerner, Director of the Office of Court Deputies at the Lucas County Court of Common Pleas.

4.

Kerner testified that he was responsible for maintaining the security camera system that would have captured when the first retaliatory threat was made. Kerner stated that he was not informed of the February 17, 2017 incident at the time, and by the time he learned of the incident, the video from the basement of the courthouse had been deleted.

{¶ 10} Thereafter, the state rested. Appellant moved for acquittal pursuant to Crim.R. 29, which the trial court denied. Appellant then rested without calling any witnesses. Following closing arguments, the trial court continued the trial to the next day to render its decision.

{¶ 11} At the start of the second day of trial, appellant reconsidered his earlier decision, and stated that he wished to testify. The trial court, over the state's objection, agreed to reopen the case to entertain appellant's testimony. Appellant testified that after his sentencing in case No. CR0201603039, he was hurt and crushed. Appellant admitted that before he got on the elevator, or while he was in the elevator, he said something to the effect of "[T]his is some bull shit. The only thing I'm guilty of is f***ing with a black (sic) woman. I'm black, f***ing with a white woman and that's what I'm guilty of." However, appellant denied making any statements once he got off of the elevator and was in the tunnel, and testified that, at most, he said "hmm, hmm, hmm." In particular, appellant denied that he made any statements threatening the victim. Appellant explained that Stambaugh may have been motivated to lie about the statements because earlier appellant had laughed as a different inmate talked "real bad" about Stambaugh.

5.

**{¶ 12}** After receiving appellant's testimony, the trial court found appellant guilty of retaliation beyond a reasonable doubt. Thereafter, at the sentencing hearing, the trial court sentenced appellant to 18 months in prison, to be run consecutively to appellant's sentence in case No. CR0201603039.

## II. Assignments of Error

**{¶ 13}** Appellant has timely appealed his judgment of conviction, and now asserts two assignments of error for our review:

> I. The trial court erred when it denied appellant's motion to dismiss indictment due to destruction of material evidence.

> II. Appellant's conviction for retaliation was against the manifest weight of the evidence.

## III. Analysis

**{¶ 14}** In his first assignment of error, appellant argues that his due process rights were violated when the state failed to preserve the video depicting where the first alleged retaliatory statement was made.

**{¶ 15}** "Specific tests are applied to determine whether the state's failure to preserve evidence rises to the level of a due process violation. The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 73. If the state has lost or destroyed materially exculpatory evidence, then appellant's due process rights have been violated. *Id.* at ¶ 74, citing *California v.*

6.

*Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10.

{¶ 16} Appellant first argues that the destroyed video is materially exculpatory. "Evidence is constitutionally material when it possesses 'an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Powell* at ¶ 74, quoting *Trombetta* at 489. Specifically, appellant argues that the video is materially exculpatory because it could have shown that appellant was not agitated or flailing his arms when he allegedly made the first retaliatory threat, which would have contradicted Stambaugh's testimony and undermined his credibility on that issue. By extension, the contradiction would have also called into question Stambaugh's credibility as it relates to his testimony that appellant made the retaliatory threats. Essentially, appellant argues that if Stambaugh was wrong about the flailing arm movements, then he may have been wrong about the alleged threats.

{¶ 17} We disagree that the destroyed video is materially exculpatory. Of particular importance, we note that the offending acts in this case were the verbal threats made by appellant. However, the destroyed video did not contain any audio, and thus it would not have provided direct evidence proving appellant's guilt or innocence. At best, the video would have supported or undermined Stambaugh's credibility on the ultimately

7.

immaterial fact of whether appellant was waving his arms. Therefore, we hold that the video may be potentially useful, but it is not materially exculpatory.

{¶ 18} Appellant next argues that if the destroyed video is not materially exculpatory, then his due process rights were still violated because the state acted in bad faith. "The term 'bad faith' generally implies something more than bad judgment or negligence. * * * It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Citations omitted.) *Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 81.

{¶ 19} Here, the record does not reveal any indications of a dishonest purpose, moral obliquity, or conscious wrongdoing on the part of the state. Rather, the state's failure to preserve the video can be attributed to oversight or incompetence. Detective Jaggers testified that in her discussion with Stambaugh, there was no mention of a video. Further, Jaggers testified that she had never been in the tunnel system, and she was not aware that a video of the incident potentially existed. Thus, the record suggests that the investigating detective did not give any consideration to whether a video existed, and it follows that the prosecutor, in working closely with the investigating detective, would also have overlooked the possibility of the existence of a video. While we are dismayed by the state's lack of thoroughness in initially responding to appellant's demand for discovery, we hold that the failure to preserve the video was the product of negligence,

8.

not bad faith. Therefore, we hold that appellant's due process rights were not violated, and the trial court did not err in denying appellant's motion to dismiss the indictment.

{¶ 20} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 21} In his second assignment of error, appellant argues that his conviction for retaliation is against the manifest weight of the evidence. When reviewing for manifest weight,

> The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 22} In this case, appellant was convicted of retaliation in violation of R.C. 2921.05(B), which provides, "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."

{¶ 23} Appellant argues that his conviction is against the manifest weight of the evidence because although Stambaugh testified that appellant was agitated and waving

9.

his arms around, the video from the time of the alleged second retaliatory threat does not show any agitation or arm movements at all. Further, appellant again points out that there is no evidence as to his arm movements or level of agitation relative to the first alleged retaliatory statement because that evidence has been destroyed.

{¶ 24} Upon our review of the record, we find that this is not the exceptional case where the evidence weighs heavily against the conviction. Here, the case turns upon the credibility of Stambaugh's testimony that appellant made the retaliatory threats. We agree that the absence of any video evidence corroborating Stambaugh's testimony that appellant was agitated and waving his arms does negatively impact Stambaugh's credibility. However, we find that the impact of this discrepancy is minor given that the offending conduct was verbal threats, not arm movements. Further, we find that Stambaugh's credibility is buoyed by the fact that he immediately reported the offending threats, and his testimony at trial was consistent with his report. Finally, we do not find any credible reason in the record that would explain why Stambaugh would be motivated to fabricate his testimony that appellant made the retaliatory threats. Therefore, we find that Stambaugh's testimony is credible, and hold that appellant's conviction is not against the manifest weight of the evidence.

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

10.

## IV. Conclusion

**{¶ 26}** For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.